UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FLINT HILLS RESOURCES, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | |
| | § | |
| **JAG ENERGY, INC.; GULFMARK** | § | CIVIL ACTION NO. _____ |
| **ENERGY, INC.; PEMEX** | § | |
| **(a/k/a PETRÓLEOS MEXICANOS, S.A.);** | § | |
| **P.M.I. TRADING LIMITED;** | § | |
| **and GRUPO PETROPOL, S.A. de C.V.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
INTERPLEADER AND DECLARATORY RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, FLINT HILLS RESOURCES, LP, files this Original Complaint for Interpleader against Defendants, JAG ENERGY, INC., GULFMARK ENERGY, INC., PEMEX (a/k/a PETRÓLEOS MEXICANOS, S.A.), P.M.I. TRADING LIMITED, and GRUPO PETROPOL, S.A. de C.V., and for Declaratory Relief against Defendants, JAG ENERGY, INC. and GULFMARK ENERGY, INC., and respectfully shows the Court as follows:

**Parties**

1. Plaintiff Flint Hills Resources, LP ("Flint Hills") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located in Wichita, Kansas.

2. Defendant JAG Energy, Inc. ("JAG") is a corporation organized under the laws of the State of Texas, with its principal place of business located in Houston, Texas. Defendant

may be served with process by serving its registered agent Andrew M. Rossi, 1550 Campbell Road, Suite 150, Houston, Texas 77055.

3. Defendant Gulfmark Energy, Inc. ("Gulfmark") is a corporation organized under the laws of the State of Texas, with its principal place of business located in Houston, Texas. Defendant may be served with process by serving its registered agent David B. Hurst, 4400 Post Oak Parkway, Suite 2700, Houston, Texas 77027.

4. Defendant PEMEX (a/k/a Petróleos Mexicanos, S.A.) ("PEMEX") is a decentralized public entity of the United Mexican States. On information and belief, PEMEX is the national oil company of Mexico and the majority of shares or ownership interest in PEMEX is owned by the Mexican national government. The action in the case is based upon an act outside the territory of the United States in connection with the commercial activity of PEMEX, which act caused a direct effect in the United States. Defendant may be served in accordance with 28 U.S.C. § 1608 and/or the Hague Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil and Commercial Matters.

5. Defendant P.M.I. Trading Limited ("P.M.I. Trading") is a private company organized under the laws of Ireland, with a principal place of business located in Mexico. P.M.I. trading has been licensed to do business in the State of Texas and maintains a registered agent for service of process in the State of Texas. Defendant may be served through its registered agent CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

6. Defendant Grupo Petropol, S.A. de C.V. ("Petropol") is a company organized under the laws of the United Mexican States, with a principal place of business in Mexico. Defendant may be served in accordance with Federal Rule of Civil Procedure 4 and/or the Hague

Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil and Commercial Matters.

## Jurisdiction and Venue

7.     This Court has original jurisdiction of this interpleader action under 28 U.S.C. § 1335(a) because more than two adverse claimants of diverse citizenship may claim to be entitled to money or property of the value of $500 or more, which is in the custody of Flint Hills. The parties who may claim the money or property are JAG, Gulfmark, PEMEX, P.M.I. Trading, and Petropol.  Defendants JAG and Gulfmark are citizens of Texas.  Defendant P.M.I. Trading is a citizen of Ireland.  Defendant Petropol is a citizen of Mexico.

8.     When this lawsuit was filed, Plaintiff Flint Hills was diverse from the claimants and the amount in controversy exceeded $75,000, excluding interest and costs.  The parties who may claim the money or property are JAG, Gulfmark, PEMEX, P.M.I. Trading, and Petropol. Plaintiff Flint Hills is a citizen of Kansas.  Defendants JAG and Gulfmark are citizens of Texas. Defendant P.M.I. Trading is a citizen of Ireland.  Defendant Petropol is a citizen of Mexico.

9.     This Court has original jurisdiction of this case under 28 U.S.C. § 1330 and 28 U.S.C. § 1605(a)(2), the "commercial activity" exception of the Foreign Sovereign Immunity Act.

10.    This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Plaintiff Flint Hills is a citizen of Kansas.  Defendants JAG and Gulfmark are citizens of Texas.  Defendant P.M.I. Trading is a citizen of Ireland.  Defendant Petropol is a citizen of Mexico.

11.     This Court has original jurisdiction of the case under 28 U.S.C. § 1367 providing for supplemental jurisdiction over claims that are so related to the claims over which this Court has original jurisdiction that they are part of the same case or controversy.

12.     Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 and 28 U.S.C. § 1397 because defendants JAG, Gulfmark and P.M.I. Trading are subject to personal jurisdiction, may be found, and reside within the Southern District of Texas.

## Factual Background

### A.    The Agreements

13.     JAG is an oil broker with which Flint Hills has contracted for purchases of condensate.  In 2004, Flint Hills and JAG entered into an agreement for the purchase of approximately 3000 barrels per day of Mexican condensate for a three-month term from July 1, 2004, to September 30, 2004.  Flint Hills understood from JAG that the condensate came to JAG from International Chemical Enterprises, which obtained the condensate from Defendant PEMEX.

14.     In or about November 2005, JAG and Flint Hills agreed to a second purchase of Mexican condensate.  Effective December 1, 2005, Flint Hills and JAG entered into a Purchase Agreement ("JAG Purchase Agreement") by which JAG agreed to deliver to Flint Hills at JAG's Sunfield Station, San Isidro, Texas facilities and Flint Hills agreed to buy approximately 1000 barrels of Mexican (Burgos) condensate per day at the price stated in the JAG Purchase Agreement.  The initial term of the JAG Purchase Agreement was one month, from December 1, 2005, to January 1, 2006, and then from month-to-month unless terminated in accordance with the agreement terms.

15.     Effective March 1, 2006, Flint Hills and Gulfmark entered into an agreement ("Gulfmark Purchase Agreement") for delivery and purchase of approximately 1800 barrels per day of Mexican condensate.  The term of the Gulfmark Purchase Agreement is one year, from March 1, 2006, to March 1, 2007, and then from month to month unless terminated in accordance with the agreement terms.

16.     On or about November 16, 2004, Flint Hills and P.M.I. Trading entered into a contract for a minimum of 1200 barrels per day of Mexican (Burgos) condensate starting on December 1, 2004, and ending in May 2005, for delivery at Sunfield Station.  On or about December 16, 2005, Flint Hills and P.M.I. Trading renegotiated the contract ("P.M.I. Purchase Agreement") for 1500 barrels of Mexican condensate per day, delivered at Sunfield Station, beginning January 1, 2006, and ending December 31, 2006.

**B.     The Dispute**

17.     On information and belief, PEMEX is the sole, original source of Mexican oil and gas products, including condensate, exported from Mexico into foreign markets.  On information and belief, Defendant PEMEX sells most, if not all, of its oil and gas products through its marketing affiliate P.M.I. Comerico Internacional, S.A. de C.V. ("P.M.I. Comerico") and its affiliates.  Defendant P.M.I. Trading is an affiliate of P.M.I. Comerico.

18.      JAG delivered contract volumes under the JAG Purchase Agreement in December 2005 and January, February and March 2006.

19.     Gulfmark delivered a test load of eighty barrels of Mexican condensate to Flint Hills under the Gulfmark Purchase Agreement.

20.     On or about March 14, 2006, P.M.I. Trading advised Flint Hills that if Flint Hills purchased Mexican condensate from an entity other than P.M.I. Trading, the condensate was

"stolen" and that it was illegal for any entity other than P.M.I. Trading to market PEMEX production.  P.M.I. Trading additionally explained that people had been entering PEMEX facilities after hours and stealing condensate volumes.

21. Flint Hills requested information about the source of the Mexican condensate obtained from JAG.  JAG responded that the condensate came from two sources, one of which was Vagos Fluidos y Pinturas ("Vagos"), and that the Vagos product came from PEMEX through Petropol and Vagos to JAG.  On or about March 31, 2006, JAG told Flint Hills that the source of some condensate was PEMEX through a contract with Asphaltos Energex.

22. Flint Hills also requested information about the source of Mexican condensate obtained from Gulfmark and was told that the condensate comes from PEMEX through Petropol and several other entities to Gulfmark.  On information and belief, a Petropol representative has represented himself to Gulfmark as a representative of PEMEX.

23. Flint Hills contacted Petropol and was told that it sold to Vagos.  Contrary to this representation, Petropol subsequently told Flint Hills that Petropol had not sold to or dealt with Vagos and did not sell condensate.  Flint Hills was provided a letter, dated January 9, 2006, and headed "PEMEX," stating that Petropol was an authorized distributor of PEMEX petroleum products with no restrictions on orders of "heavy combustoleo" ("January 9 Letter")

24. On information and belief, PEMEX does not sell condensate directly and previously sold only jet fuel and "turbino" to Petropol, not condensate.  On information and belief, the purported signature of a PEMEX sales representative on the January 9 Letter is not that person's signature and that person deals only with the sale of jet fuel to end users and not the sale of condensate.

25. As set forth above, Flint Hills was advised by P.M.I. Trading that condensate purchased from any entity other than P.M.I. trading was "stolen" from PEMEX. Flint Hills has requested documentation from JAG and Gulfmark to confirm the source of the Mexican condensate supplied to Flint Hills. Flint Hills has not received the requested documentation. Because of well-founded concerns about the source of Mexican condensate, Flint Hills suspended the JAG Purchase Agreement and the Gulfmark Purchase Agreement.

### Conditions Precedent

26. All conditions precedent have been performed or have occurred.

### Interpleader

27. Flint Hills incorporates by reference paragraphs 1 through 28, above.

28. Flint Hills holds funds due for the delivery of Mexican condensate from JAG and Gulfmark to Flint Hills. Flint Hills has received conflicting information regarding the source and ownership of the condensate delivered and cannot determine the true source and proper owner and therefore, the proper party to be paid.

29. The property subject to this interpleader proceeding is funds in the amount of $893,347.94. Flint Hills desires that these funds be paid to the proper party for the Mexican condensate at issue.

30. Multiple claims may be asserted against the funds subject to this interpleader by JAG, Gulfmark, P.M.I. Trading, Petropol and PEMEX (collectively "Claimants").

31. Claimants' interests in the funds are adverse. The funds are amounts owned for Mexican condensate delivered to Flint Hills by JAG and Gulfmark. JAG, P.M.I. Trading, Petropol and PEMEX, each of which may have an ownership interest in Mexican condensate that JAG delivered, have an adverse interest in the funds that Flint Hills holds in the amount of

$888,235.60. This fund represents amounts for Mexican condensate that JAG delivered to Flint Hills in December 2005, and January, February and March 2006. Gulfmark, P.M.I. Trading, Petropol and PEMEX, each of which may have an ownership interest in Mexican condensate that Gulfmark delivered, have an adverse interest in the funds that Flint Hills holds in the amount of $5,112.34. This fund represents amounts for the test load of Mexican condensate that Gulfmark delivered to Flint Hills.

32. Flint Hills has a reasonable fear of multiple liability because of these adverse claims.

33. Flint Hills is unsure which of the claimants is entitled to the funds.

34. Flint Hills will deposit funds in the amount of $893,347.94 with the Clerk of the Court within five (5) business days from the date of filing of this Complaint.

35. Flint Hills has been required to employ counsel as a result of this interpleader action, and therefore seeks recovery of its reasonable and necessary attorneys' fees

### Declaratory Judgment

36. Flint Hills incorporates by reference paragraphs 1 through 28, above.

37. An actual, justicable controversy exists regarding Flint Hills' and JAG's rights under the JAG Purchasing Agreement. JAG has stated its understanding and belief that Flint Hills has breached the JAG Purchase Agreement by an alleged failure to pay amounts owed to JAG for delivery of Mexican condensate, has breached express and implied warranties and is liable for conversion. Flint Hills understands and believes that the source of the Mexican condensate delivered is uncertain and in question, that conflicting claims regarding to whom payment for delivery of Mexican condensate is owed exist, and that the JAG Purchase Agreement terminated, or is subject to cancellation, for failure to deliver condensate with good

title and/or to provide requested assurances regarding the source of the Mexican condensate. Flint Hills, therefore, seeks declaratory relief, under 28 U.S.C. § 2201, to determine the rights, obligations and other legal relations of Flint Hills and JAG under the JAG Purchase Agreement.

38. An actual, justicable controversy exists regarding Flint Hills' and Gulfmark's rights under the Gulfmark Purchasing Agreement. Gulfmark has stated its understanding and belief that Flint Hills is liable to Gulfmark for amounts owed for delivery of Mexican condensate by Gulfmark to Flint Hills. Flint Hills understands and believes that the source of the Mexican condensate delivered is uncertain and in question, that conflicting claims regarding to whom payment for delivery of Mexican condensate is owed exist, and that the Gulfmark Purchase Agreement terminated, or is subject to cancellation, for failure to deliver condensate with good title and/or to provide requested assurances regarding the source of the Mexican Condensate. Flint Hills, therefore, seeks declaratory relief, under 28 U.S.C. § 2201, to determine the rights, obligations and other legal relations of Flint Hills and Gulfmark under the Gulfmark Purchase Agreement.

WHEREFORE, Flint Hills requests that, upon trial hereof, the Court relieve Flint Hills Resources, LP of all claims to the funds in the amount of $893,347.94, and that Flint Hills recover judgment declaring the rights, obligations and other legal relations of Flint Hills, JAG and Gulfmark under the JAG Purchase Agreement and Gulfmark Agreement, finding that:

1. the JAG Purchase Agreement is terminated and/or cancelled; and

2. the Gulfmark Purchase Agreement is terminated and/or cancelled.

Flint Hills additionally asks that it recover judgment awarding Flint Hills its reasonable and necessary attorneys' fees and costs of court, and that Flint Hills have such other and further relief, general and specific, to which Flint Hills may show itself justly entitled.

          Respectfully submitted,

          By:   /s/ Mark A. White
             Federal ID. No. 16797
             State Bar No. 00788675
             HOWREY LLP
             1111 Louisiana Street, 25th Floor
             Houston, Texas 77002-5242
             Telephone:  (713) 787-1400
             Facsimile:  (713) 787-1440

             ATTORNEY–IN–CHARGE FOR
             PLAINTIFF FLINT HILLS
             RESOURCES, LP

OF COUNSEL:
Jessie A. Amos
State Bar No. 01160300
HOWREY LLP
1111 Louisiana Street, 25th Floor
Houston, Texas 77002-5242
Telephone:  (713) 787-1400
Facsimile:  (713) 787-1440